# 9 FAM APPENDIX G, 100 CONSULAR DUTIES (SBU)

*(CT:VISA-1680;   09-07-2011)*
*(Office of Origin:   CA/VO/L/R)*

## 9 FAM APPENDIX G, 101  CONSULAR OFFICERS' RESPONSIBILITIES (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) The adjudicating officer (the officer who approves the visa for issuance in the system) is responsible for conducting as complete a clearance as is necessary to establish the eligibility of *an* applicant to receive a visa.  This responsibility includes:

(1)   (SBU) Checking the Consular Lookout and Support System (CLASS) and other appropriate post records, including the NIV system case notes, in all cases;

(2)   (SBU) Completing clearance procedures with other posts (see 9 FAM Appendix G, 300);

(3)   (SBU) Requesting security advisory opinions (SAOs – see 9 FAM Appendix G, 500) and/or advisory opinions (AOs) from the Department when required;

(4)   (SBU) Reviewing returns from Automated Biometric Identification (IDENT) and Integrated Automated Fingerprint Identification System (IAFIS) fingerprint clearances (see 9 FAM Appendix L);

(5)   (SBU) Reviewing returns from Facial Recognition (FR) checks*; and*

(6)   (SBU) Reviewing NIV system case notes and any other post files for information that would render an applicant ineligible for a visa.

## 9 FAM Appendix G, 101.1  Visa Lookout Accountability (VLA) (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. (SBU) Visa lookout accountability (VLA) is an on-going requirement with which you must comply.  You must make a good-faith effort to properly resolve valid hits before visa issuance.  Failure to make complete and

    accurate notes or to follow FAM guidance *indicates* a failure to make a good-faith effort.

b. (SBU) Section 140(c) of Public Law 103-236 (Foreign Relations Authorization Act, FY-94 and 95, as amended) which became effective April 30, 1996, states the following about visa processing:

    (1)    (SBU) Whenever a U.S. consular officer issues a visa for admission to the United States, that official shall certify, in writing, that a check of the automated visa lookout system, or any other system or list which maintains information about the excludability of aliens under the Immigration and Nationality Act, has been made, and that there is no basis under such system for the exclusion of such alien;

    (2)    (SBU) If, at the time an alien applies for an immigrant or nonimmigrant visa, the alien's name is included in the Department of State's visa lookout system and the consular officer to whom the application is made fails to follow the procedures in processing the application required by the inclusion of the alien's name in such system, the consular officer's failure shall be made a matter of record and shall be considered as a serious negative factor in the officer's annual performance evaluation; and

    (3)    (SBU) If an alien, to whom a visa was issued as a result of a failure described in (b)(2), is admitted to the United States, and there is, thereafter, probable cause to believe that the alien was a participant in a terrorist act causing serious injury, loss of life, or significant destruction of property in the United States, the Secretary of State shall convene an accountability review board under the authority of Title III of the Omnibus Diplomatic Security and Antiterrorism Act of 1986.

## 9 FAM Appendix G, 101.1-1  Meeting the Visa Lookout Accountability (VLA) Requirement (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. (SBU) Under Section 140(c), whenever you issue a visa, you must certify that a lookout check has been made and there is no basis for exclusion. This means that you must properly resolve all hits in the CLASS, IDENT, IAFIS, FR systems*, and case notes* according to current guidance and document your actions in the nonimmigrant visa (NIV) or immigrant visa (IVO) system before you issue a visa.  The requirement to certify in writing that the check has been made is fulfilled by taking action within the system to overcome these hits, entering appropriate case notes, and

authorizing printing.

b. (SBU) Establishing that there is "no basis for exclusion" means that you must explain your reasons for issuing over a hit in the system either by demonstrating that the person named in the hit is not the same person as the applicant, or that the basis for the hit is not grounds for an ineligibility. In some cases, you may note that the biographical data on the applicant is different. In others, you may have to explain why you were able to eliminate a hit. Examples would include resolving an NCIII hit for an applicant whose RAP sheet does not indicate an ineligibility; a decision made based on your knowledge of local naming conventions; or any other information you gained during the interview. You should be clear in your case notes, especially in instances where there is a close match.

c. (SBU) There is no bright line rule for when a hit is a match, when it may be overcome, or when an issuance over a hit is a VLA violation. When reviewing namecheck results, adjudicating officers should take into account a) the local naming conventions and b) the fact that records may have been entered by users who had incomplete or inaccurate information or were unfamiliar with foreign naming conventions. Given names, surnames, patronymics, matronymics, and other naming elements may not be listed in the correct sequence or records may contain partial names. Therefore, close hits should be carefully considered before being eliminated. Unless there are obvious differences in the names and other biographic data elements, and post is aware from local naming conventions that the hit cannot be a match, records should be considered a match. If you eliminate a hit based on your understanding of the local naming conventions, be sure to add a case note explaining your reasoning.

d. (SBU) For instance, if your applicant is John Charles Smith, DPOB 7/1/1981, Australia, and the CLASS hit is a "00" entry for "Smith, John" with no DPOB, you cannot exclude your applicant as a match for that hit and must resolve it before issuing the visa. Similarly, if your applicant is Muhammad Akbar Ali, DPOB 7/1/1981, Pakistan, and the CLASS hit is a "00" entry for "Ali, Muhammad" with no DPOB you would not have sufficient information to exclude your applicant as the *plausible* subject of the hit. *You cannot resolve certain* categories of hits, such as "00" hits, at post regardless of how well and favorably known the person might be. *The guidance in 9 FAM Appendix G, 503.2 requires you to submit SAOs for all "00," and most 212(a)(3) hits, including "quasi" hits preceded by the "P" indicator* (see 9 FAM Appendix G, 500).

e. (SBU) The Visa Office continues to work with the interagency community to remove lookouts with *minimal* identifying biographic information. If

you identify CLASS hits with common names and no additional biographic information, please submit them to the Office of Information Management and Liaison (CA/VO/I) (Classfeedback@state.gov) for review.

## 9 FAM Appendix G, 101.1-2  Issuing Officer (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) Section 140(c) speaks in terms of the consular officer who "issues" a visa.  For the purposes of VLA, in both NIV and IVO, the officer who checks the lookouts and authorizes the printing of the visa is the "issuing" officer.  In some instances, the officer who examines the application and makes the preliminary decision to issue or deny a visa may not be the same person as the issuing officer.  Although *VO* strongly *prefers that* the interviewing officer review IDENT or FR results *related to the same case*, it is *often unavoidable that* a different officer *must* perform these functions.  The officer *or officers* who *permit* the case to proceed to printing is/*are* the responsible officer*(s)* for that part of the case for VLA purposes and must review all categories of hits, in CLASS, IDENT, IAFIS, or FR even if the interviewing officer has already reviewed some categories of hits.  While duplicative, this process will ensure that the adjudicating officer has the complete picture before making a decision.  This will likely mean that some cases will have more than one officer who makes a VLA certification to authorize issuance.  The NIV and IVO systems will register each adjudication for VLA purposes*, and record them in the CCD.*

## 9 FAM Appendix G, 101.1-3  Who May Authorize Printing of Visas (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) Only consular officers or other employees specifically authorized by the Assistant Secretary for Consular Affairs are permitted to make a visa lookout accountability (VLA) certification and authorize printing of visas. The Department *ceased* visa adjudication by consular associates in September 2005.  Foreign Service *officers* who do not hold consular *titles* to adjudicate visas at post are not authorized to either adjudicate or print-authorize visas.

## 9 FAM Appendix G, 101.1-4  Visa Lookout Accountability (VLA) Procedures (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. (SBU) The Department interprets Section 140(c) to mandate, before a visa can be issued, a check of the Department's visa lookout system

(CLASS), as well as *checks of returns in* IDENT, IAFIS, *FR, and* the NIV system case notes, to verify that there is no basis under *any* system for a visa *ineligibility.* You must document in the NIV or IVO system how you resolved the results of these checks; that serves as the VLA certification for a case. The act of authorizing the visa for printing signifies your determination that *you found* no relevant hits. *The CCD retains this* record, along with your name, in the Machine Readable Visa (MRV) case history file and constitutes the written certification for VLA purposes. All issuing officers will be considered to have made the Section 140(c) certification (VLA Certification) when they authorize IV or NIV printing. VLA does not *apply to visa* refusals.

b. (SBU) For hits in the CLASS system, you must check and resolve all serious, Category I ("CAT I") *ineligibilities* before *you make* a certification and *may issue* a visa. Thus, *CA/CST has programmed* the nonimmigrant visa (NIV) and immigrant visa (IVO) systems to ensure that no visa can be printed until you have checked the CAT I CLASS hits and have documented the reason *you issue* a visa (waiver, security advisory opinion (SAO) response, advisory opinion (AO) response, not same person, etc.). The CLASS database also includes lookouts provided by other agencies, to which officers must give the same consideration as Department-originated CAT I hits.

c. (SBU) While a CAT II hit may provide an officer with information that could lead to a finding of inadmissibility, CAT II hits reflect prior decisions or lookouts that may or may not be relevant or binding on the officer handling the new application. Thus, these hits, without further inquiry, do not provide a basis for refusal. Moreover, CAT II hits do not indicate the kind of security-related basis for refusal that was the focus of Congressional concern in enacting Section 140(c). Nonimmigrant visas (NIV) and immigrant visas (IVO) applications have been programmed to require that an officer check all CAT II hits before a visa may be printed, but the officer is not forced to overcome them by selecting a reason from the pull down menu as is required for CAT I hits. Issuing officers are permitted to certify that there is "no basis under (the lookout system) for the exclusion" of the applicant without documenting the reason for issuance in the system for every CAT II hit. However, all CAT II hits should be reviewed and resolved before issuance. Thus, the issuing officer should not authorize any case for printing unless he or she can confirm that the lookout system was, in fact, checked, and that all CAT I and CAT II hits were handled appropriately.

d. (SBU) The fingerprint checks *in* IDENT *and* IAFIS, *the facial recognition checks in* FR, and *the review of* NIV systems *case notes (and any other post databases)* also *constitute* "systems or lists which maintain

information about the excludability of aliens under the Immigration and Nationality Act" that are therefore subject to VLA requirements. Remember that IDENT, IAFIS, and FR hits are different from CLASS hits in that they "hit" on biometric information that is separate from name and date of birth (DOB). You cannot eliminate a "near match" in the case of an IDENT/IAFIS hit. The fact that the name or DOB associated with an IDENT/IAFIS hit does not match the visa applicant's name or DOB does not mean that the hit does not in fact apply to the applicant.

e. (SBU) You *must* clear an IDENT hit by selecting "Adverse" (information that would preclude issuance of the visa (i.e., a visa ineligibility), "Not Adverse," (information that would not preclude issuance (not a visa ineligibility), or "Waived." The selection of one of these choices constitutes a certification for VLA purposes.

f. (SBU) You *must* clear an IAFIS hit by evaluating the RAP sheet attached to the record to determine whether the applicant matches the hit, and whether the offenses on the rap sheet indicate a visa ineligibility. The decision you enter in the event of an IAFIS match *constitutes* certification for VLA purposes. (See 9 FAM Appendix L, 402 for additional details.)

g. (SBU) For FR returns, you must review each possible match and select "adverse," "not adverse," "not a valid match," or "waiver of ineligibility." The selection of one of these choices constitutes certification for VLA purposes.

h. *(SBU) For NIV case notes and other information sources at post, you must review notes for any indication that post has information, not available in other consular systems, that would indicate the applicant is ineligible for a visa. Because CA designed automated consular systems to more quickly and accurately identify visa ineligibilities, CA/VO strongly recommends that posts either transfer locally held information to CA/VO/I for entry into CLASS (as "00" hits), or enter local ("L") lookouts in CLASS advising consular officers that post files contain potentially adverse visa information.*

## 9 FAM Appendix G, 101.1-5  Compliance with Visa Lookout Accountability (VLA) Requirement Implemented (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) *A* VLA module *created for* NIV and IVO software *compels compliance with the VLA requirement.* The revised software requires you to view any CAT I hits before being allowed to authorize the visa for printing. You must respond to an on-screen prompt with a reason for overcoming the CAT I hit. *Your reason for overcoming a CAT 1 hit should accurately reflect the facts of*

*the case. For example, if you entered "NAME AND/OR DOB OF APPLICANT DIFFERENT" when the name and date of birth in fact matched those of the applicant, it would suggest that you had not made a good-faith effort to resolve the hit before issuing the visa.*

## 9 FAM Appendix G, 101.1-6  Procedures to Document Compliance (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. *(SBU) Current versions of the IVO and NIV systems contain the full VLA module for documenting compliance for review of CLASS hits.  Before you can authorize a visa for printing, the VLA module compels you to:*

   (1)    *(SBU) View each screen showing any CAT I, IDENT, IAFIS, or FR hits;*

   (2)    *(SBU) Choose one or more comments from a list of standardized comments to explain why the visa is being issued despite the hit(s), and add any additional case notes;*

   (3)    *(SBU) Review the NIV system for any derogatory information; and*

   (4)    *(SBU) The system then stores a record of the hits, the name of the officer authorizing issuance, and the officer's comments.  The entire record is archived by post and will be retained for a minimum of 11 years.  Posts do not need to retain NIV application forms beyond the retention requirements solely for VLA purposes.*

b. *(SBU)  You should note that the current versions of NIV and IVO do not compel you to review case notes before print-authorizing a visa.  You must do that in addition to the system prompts to review the other namecheck systems.*

## 9 FAM Appendix G, 101.1-7  Non-Electronic Visa Lookout Accountability (VLA) Certifications (SBU)

*(CT:VISA-1644;   05-04-2011)*

(SBU) During the transition to the current electronic documentation of VLA compliance, some posts were required to maintain the written VLA certification on a printout of the hits for each case attached to the Form DS-156, Nonimmigrant Visa Application, in older cases.  These records were maintained for eleven years.  It is not necessary to produce and maintain paper VLA records for any cases adjudicated under the current NIV and IVO systems that maintain the records electronically.

## 9 FAM Appendix G, 101.2  Visa Annotations - Nonimmigrant Visas (NIV) and Immigrant Visas (IV) (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) *You must annotate waivers* granted by Department of Homeland Security (DHS) on the visa.  If *you submit* an advisory opinion (AO) or security advisory opinion (SAO) and the Department determines that the applicant is either not identifiable with the "hit" or authorizes *you* to issue a visa under an applicable law or regulation*, you must* annotate the visa, "Clearance received" and the date that *you* received *it*.  Please remember that Customs and Border Protection (CBP) inspectors have access to case information through the Consular Consolidated Database (CCD), so additional information in the case notes will assist officers at the port of entry (POE).  (See 9 FAM 41.113 PN10.2 for more information on annotations.)

## 9 FAM Appendix G, 101.3  Supervisory Duties (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. (SBU) Supervisors are responsible for ensuring that all consular officers fully understand the VLA provisions and requirements, as well as the consequences for failure to comply with VLA procedures.  *You should provide* VLA training to all officers at post as well as to all new line officers before they assume issuing responsibilities.  VLA responsibilities and how to evaluate hits should be an ongoing topic of discussion at staff meetings.

b. SBU) The annual *certification of consular* management controls must include a certification that the consular section chief has reviewed VLA procedures with all employees annually.

c. (SBU) To ensure compliance with Section 140(c)(1)(B), you, as supervisor, are responsible for reviewing issued visas to confirm that issuing officers have complied with VLA requirements; i.e., that they are checking the lookout system, issuing visas only in compliance with procedures for handling CAT I hits.  The *CCD report "NIV Issuances Over Exact CAT1 Hits"* is included in the standard adjudication review report in the CCD*, and* can be run separately by consular managers (see 9 FAM 41.113 PN17.2).  Prompt and regular review of this report *can deter* improper issuance of visas.  In the event that you detect a VLA violation, you should take immediate steps to prevent the visa from leaving the consular section and cancel it.  *Such an event* should be grounds for

counseling the issuing officer and providing closer supervision. In the event *that you have already sent* the visa-ed passport back to the applicant*,* you must take immediate steps to revoke the visa*,* and you must report the apparent VLA violation to Post *Operations* Division (CA/VO/F/P) for *its* review.

e. (SBU) If you learn of a VLA violation in your section, in addition to counseling the officer, you should undertake a review of your office's management controls, workflow, workload, in-house training, and any other factors that may have contributed to the lapse. While the responsibility for the violation rests solely on the adjudicating officer, supervisors have an obligation to provide an environment that is supportive of careful and correct decision-making. The Office of the Executive Director (CA/EX), the Office of Fraud Prevention Programs (CA/FPP), and the *Office of* Visa Services (CA/VO) can assist in evaluating your workflow and management controls.

# 9 FAM Appendix G, 101.4  Guidance on Visa Lookout Accountability (VLA) Violations (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. (SBU) In general, a VLA violation occurs when there is a clear match to the applicant in the *case notes,* CLASS, IDENT, *IAFIS,* or FR result and the officer does not resolve the hit before issuance. It can also occur when there is insufficient information in the hit to allow the officer to eliminate the applicant as the *plausible* subject of the hit. A VLA violation occurs when a consular officer incorrectly excludes a hit as a potential ineligibility, and issues the visa without resolving the hit. The Visa Office has the responsibility for *determining whether* there has been a VLA violation.

b. (SBU) Case notes are crucial for documenting VLA compliance, especially in the instances of close matches. Without an explanation for why a close match was overcome, the Visa Office may consider such an issuance a VLA violation.

# 9 FAM Appendix G, 101.5  Procedures for Documenting Visa Lookout Accountability (VLA) Violations (SBU)

*(CT:VISA-1680;   09-07-2011)*

a. (SBU) The Visa Office may be alerted to a VLA violation in any number of ways. The officer's supervisor may notice a potential violation during

regular reviews of issuances. The Consular Integrity Division in the Office of Fraud Prevention Programs (CA/FPP/CID) may flag a possible VLA violation while conducting periodic data analysis or the Office of Legislation, Regulations, and Advisory Assistance (CA/VO/L) may find a potential violation in the course of an AO or SAO request. CBP inspectors at POEs have also notified the Bureau of Consular Affairs (CA) of visas that were issued improperly over CAT I hits.

b. (SBU) However the potential case becomes known, it must be presented to the Post *Operations* Division (CA/VO/F/P), whose chief coordinates the VLA violation process. CA/VO/F/P will first contact the officer to obtain any additional clarification about the case or the adjudication. If CA/VO/F/P still believes a VLA violation has occurred, it will ask CA/FPP/CID to review the adjudication history of the officer in question to ascertain if the VLA violation is a single occurrence, or if it is part of a pattern of potential VLA violations or lapses in judgment, and report those findings to CA/VO/F/P. CA/VO/F/P will then submit the case to the *Visa Office (VO)* VLA Panel.

c. (SBU) The *VO* VLA Panel consists of representatives from the Office of Field Support (CA/VO/F) and Office of Legislation, Regulation and Advisory Assistance (CA/VO/L). The Panel will review the potential violation and decide whether the officer issued a visa without eliminating a hit per current procedures.

d. (SBU) If the panel determines that a VLA violation occurred, *CA/VO/F/P* will forward the VLA record of violation form by e-mail to post if the adjudicating officer is still there. The officer's supervisor must complete and sign the form within five working days of receipt of the form and then provide the form to the consular officer who committed the violation. The consular officer must complete and sign the form within ten working days of receipt, and return it to CA/VO/F/P. If the adjudicating officer is no longer at post, *CA/VO/F/P will contact him or her* at the current post and only he or she will sign the form. A note will be made on the form to indicate that the officer is no longer at the post where the violation occurred in the space where the signature of the supervisor would normally be placed.

e. (SBU) CA/VO/F/P will then forward a copy of the form under a memo from the CA/VO Managing Director to Office of Employee Relations (HR/ER), for disciplinary action. If there are subsequent violations, HR will consider more severe disciplinary action.

f. (SBU) In the case of an officer who authorizes a visa to an alien who later participates in a terrorist act, CA/VO will coordinate the convening of an Accountability Review Board under the authority of Title III of the

Omnibus Diplomatic Security and Antiterrorism Act of 1986.

## 9 FAM Appendix G, 101.6  Appealing a VLA Violation (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) An officer who does not believe his/her decision was a VLA violation should provide an explanation and/or additional evidence to CA/VO/F/P.  *The VO Managing Director* will consider the appeal and decide whether to retract the VLA violation.  Final determination of a VLA violation remains with the Visa Office.

# 9 FAM APPENDIX G, 102  DEFINITIONS (SBU)

*(CT:VISA-1644;   05-04-2011)*

(SBU) The following terms are used in connection with visa clearances:

(SBU) "Clearance" means the process of obtaining information pertaining to an applicant's visa eligibility from records available to the Department (through Washington agency name check and security advisory opinion requests) or at Foreign Service posts (through checks of post records and/or outside sources).

(SBU) "Communist and Communist Controlled Countries" are currently considered to be China (People's Republic of), Cuba, Laos, North Korea, and Vietnam.

(SBU) The "consular lookout and support system (CLASS)" consists of the computerized name search system which is connected to the Department's central name check files.

(SBU) "Facial Recognition (FR)" is a system that checks certain visa applicant photographs against the photos to be checked against the Watchlist and Photo Gallery databases.

(SBU) "Integrated Automated Fingerprint Identification System (IAFIS)" is managed by the Federal Bureau of Investigation (FBI) Criminal Justice Information Services (CJIS) Division in Clarksburg, West Virginia.  IAFIS contains more than 50 million criminal history record fingerprints contributed by Federal, State, local, and tribal law enforcement agencies.

(SBU) "Automated Biometric Identification (IDENT)" is a fingerprint matching system for rapid biometric identification of subjects.  The Unified IDENT database contains all other IDENT records, such as the Biometric Visa (BioVisa) and the U.S. Visitor and Immigrant Status Indicator Technology

Program (US-VISIT) enrollments.

(SBU) "Name check" means a search of the records of other U.S. Government agencies based on a CLASS hit that appears to match the applicant (e.g., similar name and date of birth or place of birth).

(SBU) "Port of entry (POE)" means the place at which an alien is inspected by the Department of Homeland Security (DHS) to determine his or her eligibility for entry into the United States.

(SBU) "Post records" means the consular lookout and support system (CLASS), other records of the consular section, and information from the political section, economic section, and any other U.S. Government agency at post that may be available to the consular officer.

(SBU) "Precheck" or "preclearance" means that all appropriate sources of information are checked prior to visa issuance.

(SBU) "Proscribed organization" means any group that falls within the purview of INA 212(a)(3)(D).  A member or affiliate of a proscribed organization is ineligible for an immigrant visa unless he or she qualifies for relief.

(SBU) "Residence" means a person's place of general abode; i.e., his or her principal, actual dwelling place in fact, without regard to intent.

(SBU) "Security advisory opinion (SAO)" means the Department's advice on the security aspects of any visa case submitted by a consular officer.  The processing of security advisory opinions includes the completion of Washington agency namechecks.

(SBU) "Sources of Information" for clearance purposes include the following:

(1)   (SBU) Post records;

(2)   (SBU) Local police and security authorities;

(3)   (SBU) The records of other Foreign Service posts;

(4)   (SBU) The investigative resources of the Department (name checks and SAOs);

(5)   (SBU) Supervisory diplomatic and consular officers in the country of application;

(6)   (SBU) Diplomatic and consular officers of other countries; and

(7)   (SBU) Any other resources available to the consular officer.

# 9 FAM APPENDIX G, 103  OTHER AVAILABLE GUIDANCE (SBU)

## 9 FAM Appendix G, 103.1  Related Sources of Guidance (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) *You* should consider the clearance procedures discussed in this Appendix in conjunction with the relevant portions of 9 FAM Appendix D, 200 and the examples of clearance telegrams found in 9 FAM Appendix E, 200 and 9 FAM Appendix L.

## 9 FAM Appendix G, 103.2  Country-Specific "Special Clearance and Issuance Procedures" are on the Intranet (SBU)

*(CT:VISA-1680;   09-07-2011)*

a.  (SBU) The Visa Reciprocity and Country Documents Finder *(found on CAWeb)* contains specific information on the special clearance requirements for nationals of each country.  These country-specific instructions supplement, and must be used with, the general clearance guidance found here.  *You* must become familiar with any special clearance requirements affecting nationals of their host country, and must consult the appropriate country listing for third-country applicants as necessary prior to visa issuance.

b.  (SBU) Note that all Special Clearance and Issuance Procedures in the Reciprocity Schedule (or the fact that there are no such procedures for a given country's nationals) are deemed Sensitive but Unclassified and are thus not posted on the Internet version of the FAM.

# 9 FAM APPENDIX G, 104  CONSULAR LOOKOUT AND SUPPORT SYSTEM (CLASS) ENTRIES BY CONSULAR POSTS (SBU)

## 9 FAM Appendix G, 104.1  Posts Usually Responsible for Entering Ineligible Aliens (SBU)

*(CT:VISA-1644;   05-04-2011)*

(SBU) It is vital to the clearance process that all visa-issuing posts enter into consular lookout and support system (CLASS) the names, dates and places of birth, and refusal or lookout codes of aliens found, or believed to be, ineligible for visas.

# 9 FAM APPENDIX G, 105  EVALUATION OF INTELLIGENCE INFORMATION (SBU)

## 9 FAM Appendix G, 105.1  Assessment of Information and Source (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) When *you share* information of a security nature, obtained from any source, to another consular post or to the Department, you must provide the receiving office with:

(1)    (SBU) An evaluation of the credibility and applicability of the information; and

(2)    (SBU) An evaluation of the reliability of the source.

## 9 FAM Appendix G, 105.2  Evaluation of Organizational Membership (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) When *you provide* information to another post or to the Department about an applicant's membership in, or affiliation with, an organization which may be unknown to the recipient, indicate whether the organization falls within the purview of INA 212(a)(3)(B).  You should also advise the requesting post if the alien's organizational membership or affiliation, although not proscribed, should invite special scrutiny (e.g., an organization involved in terrorist activity).  Finally, *you should* assess, if possible, whether the nature of the applicant's membership or affiliation may render him or her ineligible for a visa.

# 9 FAM APPENDIX G, 106  U.S. POLICE CLEARANCES (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) With the inclusion of National Crime Information Center (NCIC) and Interstate Identification Index (III) information in CLASS, as well as the use of ten prints to run checks against IAFIS, *you should consider* a CLASS namecheck and IDENT/IAFIS check a U.S. police clearance for visa purposes.

## 9 FAM APPENDIX G, 107  CLEARING IMMIGRANT VISA APPLICANTS (SBU)

*(CT:VISA-1680;   09-07-2011)*

(SBU) The National Visa Center (NVC), Kentucky Consular Center (KCC), or consular posts abroad must initiate necessary clearances at the earliest possible time for immigrant visa applicants who are either not subject to numerical limitations or are subject to a numerical limitation for which visa numbers are currently available.  *You should normally request clearances* as soon as *you receive* the Form DS-230, Application for Immigrant Visa and Alien Registration*,* from an applicant.